THE CONNECTICUT LIGHT AND POWER COMPANY *vs.*
THE TOWN OF OXFORD.
THE CONNECTICUT LIGHT AND POWER COMPANY *vs.*
THE TOWN OF OXFORD ET AL.

Third Judicial District, New Haven, June Term, 1924.

WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

This State has always recognized the right of a property owner to obtain appropriate relief against an illegal tax independently of his statutory remedy of appeal from the board of relief; therefore, Chapter 302 of the Public Acts of 1921, which provides for an application to the Superior Court for relief within one year from the due date of a tax which has been assessed by a town or city in which the property was nontaxable, or which is manifestly excessive under the provisions of the General Statutes for determining the valuation of such property, created no new right, or even a new remedy, except in form, but was merely declaratory of established rights and remedies; and it applied to any such tax which was existing and unpaid at the date of its passage, even though the time for appealing from the board of relief had expired.

In the present case, the plaintiff owned a dam situated partly in the town of Oxford and partly in the town of Monroe, from which it derived water power for generating electric current at its power plant in the town of Monroe, whence the current was distributed over a transmission line consisting of cables and wires attached to a series of large steel towers, which were imbedded in cement and erected at intervals along perpetual rights of way on land belonging to private owners. The defendant town of Oxford claimed the right to tax so much of the dam and transmission line as was located within its limits. *Held:*—

1. That general statutory provisions with respect to the situs and taxation of corporate property were inapplicable, since taxation of water power companies is governed exclusively by §§ 1218 and 1219 of the General Statutes, in accordance with the settled policy of the legislature to provide special and appropriate methods of taxing public service corporations engaged in operations which differentiate them from ordinary business enterprises.

2. That the dam, under the language of § 1219, was "incidental to the machinery operated by it" and was, therefore, wholly taxable in the town of Monroe, while the land under the dam was taxable in each town according to its location.

3. That the transmission line could not be regarded as an easement, because easements are never separable from their dominant estates for purposes of taxation; nor could the towers be regarded as fixtures in view of their nature and intended use.

4. 'That the transmission line was personal property incidental to the plaintiff's plant in the town of Monroe, and under § 1219, taxable only in that town.

Argued June 4th—decided July 28th, 1924.

Actions seeking to have certain tax assessments upon the plaintiff's property, made by the assessors of the defendant town, declared illegal and void, and for other equitable relief, brought to the Superior Court in New Haven County where a demurrer to the complaint in one case (No. 18391) was overruled (*Banks, J.*), and the causes were afterward tried together to the court, *Avery J.;* facts found and judgment rendered for the plaintiff in each case, and appeal by the defendant. *No error.*

The two actions above noted were brought by the plaintiff for relief against the action of the assessors of the town of Oxford, in the assessment and valuation for taxation of its property upon the tax lists of the town for the years 1920 and 1921, and were heard together in the Superior Court and in this court on appeal. The first action was brought under the provisions of the Public Acts of 1921, Chapter 302. The second action is an appeal from the action of the board of relief of the town refusing to reduce plaintiff's tax list, taken in usual form to the Superior Court.

The complaint in the first action alleged the organization of the plaintiff as a corporation engaged in the generation of hydro-electric power, for power, light and heat within the State; that on October 1st, 1920, it owned and used a dam located on the Housatonic River partly in Oxford and partly in Monroe for generation of power; that power was generated by

a plant erected in the town of Monroe, in connection with and a part of this dam; that the power generated at this plant is transmitted over a power line of the plaintiff, consisting of towers and wires running from the plant through the town of Oxford to the city of Waterbury, and thence distributed for use; that the assessors of the town of Oxford, in making up the list of taxable property in the town, made an assessment of plaintiff's property as follows:—mills and dams, etc., $500,000; transmission line, $41,000; seventeen buildings, $7,525; ten dwellings, $18,300; four hundred and seventeen acres of land, $14,595; one automobile, $600; other taxable property, $800. The town computed and laid a tax on this listed property. The plaintiff claimed that the mills, dams and transmission line above named were not taxable in the town of Oxford, and claimed a judgment declaring the assessment and the tax computed thereon to be void. The defendant town demurred to the complaint for reasons which will be hereafter stated in the opinion, which demurrer was overruled, and the defendant answered over.

Trial was had upon a stipulated statement of facts containing the facts in the complaint as above set forth, and also facts as follows: The power generated is conveyed along and upon steel towers, with cables and wires attached, which towers are about fifteen feet square at the base and extend to a height of about thirty-five feet to a point, and are imbedded in cement foundations sunk in the earth, the top of which extend above the surface of the soil in the town of Oxford; and to the towers are attached insulators, arms and other equipment capable of carrying wires for the transmission of electric power. The power generated by means of the dam, water and power house, is transmitted by the plaintiff corporation over and by means of the steel towers and equipment aforesaid,

owned by the plaintiff, through the town of Oxford to other points where it is distributed for use. Plaintiff did not appeal to the board of relief for the town of Oxford from the assessment made in 1920.

It was afterward made part of the record by stipulation that the eighty-two towers described in the agreed facts are located on land belonging to private owners in the town of Oxford, from whom the plaintiff had obtained rights of way in perpetuity for the purpose of erecting and maintaining the towers, to which are attached cables, wires, insulators, arms and other equipment capable of carrying wires for the transmission of electric power. To the list handed to the assessors in 1920 by the plaintiff, the assessors added the item, "one part of dam $500,000."

The allegations of the complaint in the second action are similar to those contained in the complaint in the first action, with proper change of dates, and further allegations as to the action of the assessors and board of relief. The agreed statement of facts in the second action states substantially the same facts as those found in the first action, with proper change of dates, and further states that plaintiff filed a list with the assessors of the town of Oxford within the time provided by law, not including one half of its dam or eighty-two steel towers with cables and wires attached, and the assessors added the items, part of one dam $500,000, and eighty-two steel towers with cables and wires attached, at $500 each, a total of $41,000. The plaintiff appealed from the doings of the assessors to the board of relief of the town of Oxford, which upheld the assessors as regards the items above referred to, and from the action of the board of relief appealed to the Superior Court.

Certain facts relating to the taxation of the real property of plaintiff in both actions are omitted, as

the questions involved do not form a part of the appeals to this court.

The stipulation in each action states the questions at issue between the parties to be: "Did the town of Oxford have power and authority to assess and lay the tax upon the mills, dams, steel towers (called in the complaint transmission lines) and · equipment, etc., or was said property not subject to such assessment and tax?"

The trial court found the issues in each action for the plaintiff, and that the tax levied upon the half of the dam and upon the towers should be stricken from the taxable lists of defendant, and enjoined the defendant town from collecting any tax levied on these items.

The defendant appealed in both actions to this court, and the trial court found all the facts stipulated by the parties true, and the only facts considered in the actions.

The reasons of appeal in the first action are as follows: 1. The court erred in overruling defendant's demurrer to the complaint. 2. The court erred in not ruling and holding that the part of the dam situated in the town of Oxford is taxable in said town. 3. The court erred in not ruling and holding that the steel towers with cables and wires attached, located in the town of Oxford, are taxable in said town of Oxford. 4. The court erred in refusing to hold and rule that the steel towers with cables and wires attached, located in the town of Oxford, are real estate taxable in said town. 5. The court erred in refusing to hold and rule that the steel towers with cables and wires attached, located in the town of Oxford, are taxable in said town as personal property permanently located or stationed in said town.

The reasons of appeal in the second action are identical with the above, omitting the first reason.

*Benjamin Slade* and *Samuel H. Platcow*, for the appellant (defendant.)

*Alfred C. Baldwin*, for the appellee (plaintiff).

KEELER, J. Considering the defendant's demurrer to the complaint in the first action, we find that in its brief, the defendant town makes two claims of law as comprehending its contentions, that is, (a) Public Acts of 1921, Chapter 302, has no retrospective or retroactive effect; (b) this Act cannot revive the right of appeal already barred prior to its passage. The Act in question was approved June 14th, 1921, and took effect from its passage. It provides, among other things, that when a tax has been laid upon property nontaxable in the town in whose tax list it was set, the owner thereof, prior to the payment of such tax, in addition to the other remedies provided by law, may make an application for relief to the Superior Court in the county wherein such town is situated, within one year from the time when such tax became due.

In supporting its first claim above stated, defendant insists that the "application for relief" therein authorized is in effect an appeal from the doings of the assessors and board of relief, and as the Act contains no provision as to its retrospective or retroactive effect, it must, by a familiar rule of construction, be held to have only prospective operation, citing *Humphrey* v. *Gerard*, 83 Conn. 346, 352, 77 Atl. 65, to the effect that unless the terms of statutes "show clearly and unmistakably a legislative intention that they should so operate," they are not to be construed to operate retroactively.

The interpretation of this statute depends largely upon its purpose, and its field of operation. It is

Connecticut Light & Power Co. *v.* Oxford.

concerned, in the first place, with property not legally taxable in a municipality where taxed, and, in the second place, with a tax computed on an assessment manifestly excessive, and which could not have been arrived at except by disregarding the provisions of the General Statutes as to valuation. We should also note at the outset, that action under this statute is to be taken within one year from the time when the tax became due, that is, "on the first day on which the collector thereof, according to the terms of the notice given by him, is ready to receive them." General Statutes, § 1294. This is an important date, for it determines the beginning of the year, during which a collector may continue by certificate the lien of taxes on real property. General Statutes, § 1308. This statute involves matters dissociated from the numerous questions which may arise in the performance of their duties by assessors, and the revision of their action by a board of relief, and is concerned with two only of the matters which might be questioned by an appeal from the board of relief to the Superior Court. The remedy provided is directed toward one thing only, an existing tax; the time during which the remedy can be invoked is definitely one year.

Furthermore, the Act took effect from its passage, and was evidently designed for immediate use. If not so designed, this provision was hardly necessary, since, except in those towns where the assessment and collection of taxes are regulated by laws specially applying to them, taxes on the lists of 1920 would have been assessed, acted upon by the board of relief, with the rate bill in the hands of the collector, and the time for appeal to the Superior Court would have expired, at some date approximating May 1st. The Act further provides that the remedy it affords shall be in addition to other legal remedies. As to the last

provision, the defendant's counsel argue that the Act assumes that the taxpayer has other remedies, and since, at the time of the passage of the Act, these other remedies had expired by time limitation, he had no other remedies, and therefore this new remedy did not avail him. We deem this a plain introversion of the intent of the Act, and hold that it stands by itself, and is to be construed by its own purpose and intent; that is, it applied to any existing, unpaid tax obnoxious to its provisions. To say this is not to make the Act retroactive.

The second point, above noted, of the defendant is that the statute under consideration could not revive the right of appeal from a tax assessment which, prior to its passage, had expired under existing law. Defendant urges that had the plaintiff appealed to the board of relief, that body would have acted in February, 1921, and that by April 30th, the right to appeal would have expired. Counsel therefore insist that plaintiff, having failed to appeal to the Superior Court in time, could not obtain an injunction, since it had failed to utilize its remedy at law and, not having paid the tax, it had no legal remedy to recover a tax illegally laid and collected.

Assuming, *pro argumento*, as did the trial judge, that there is no clear indication, one way or the other, of the legislative intent to affect by the Act a tax prior to its passage, we come to the question whether the statute creates a new right or a new remedy only. If the latter view is correct, then the Act is applicable to proceedings begun by its authority relating to acts done and conditions prevailing prior to its enactment. This is elementary. We recognize, of course, the fact that a law relating formally and in terms to the remedy, may have the effect of creating or impairing a substantive right. But there is nothing in the instant

case to require us to consider this modification of the general rule. As the trial judge correctly and tersely states in his memorandum: "The right involved is that of the plaintiff to have a judicial determination of the question as to whether certain of its property was taxable in the town of Oxford upon the list of 1920."

The trial judge and counsel seem to have discussed the question as analogous to that of whether the defense of the statute of limitations, when a right of action has been barred thereby, is a vested right not to be impaired by subsequent legislation. The decisions upon this point are conflicting, and we do not deem an adjudication thereof in any way necessary or helpful in the decision of the instant case. The remedy which had been barred, was that of appeal to the Superior Court from the action of the board of relief. The statute in question does not act in any way as such an appeal. It provides another and different method of attacking the validity of an assessment upon two different grounds included in its provisions, and upon those only. We have held heretofore that the remedy by appeal from the action of a board of relief is not exclusive, and that the tax may be paid and an action brought to recover it as money illegally received and retained, and that in extreme cases an injunction may be granted restraining the collection of the tax. *Hubbard* v. *Brainard*, 35 Conn. 563, 576; *First Ecclesiastical Soc.* v. *Hartford*, 38 Conn. 274, 290; *Seeley* v. *Westport*, 47 Conn. 294; *New London* v. *Perkins*, 87 Conn. 229, 87 Atl. 724; *Phelps* v. *Thurston*, 47 Conn. 477, 485; *Shaw* v. *Hartford*, 56 Conn. 351, 15 Atl. 742; *Underwood Typewriter Co.* v. *Chamberlain*, 92 Conn. 199, 102 Atl. 600.

To these recognized remedies the statute of 1921 merely added one more, and this added remedy was,

properly speaking, merely declaratory of existing legal and equitable rights; for can it be doubted that relief outside of that obtainable by appeal, would have been afforded as respects the two categories mentioned in the recent statute, that is, the absolute nontaxability of the property in the municipality where situated, and a manifest and flagrant disregard of statutory provisions. The demurrer was properly overruled.

The remaining assignments of error present the question of the taxability of that part of plaintiff's dam located in the town of Oxford, and of the eighty-two steel towers located in this town, to which is attached the equipment carrying the wires along which the electric current generated at the power house operated in connection with the dam, is conveyed and transmitted to various localities for use.

The plaintiff's dam is situated partly in the town of Monroe and partly in the defendant town of Oxford, and as appears in the statement of facts, an assessment of the part thereof situated in the latter town has been made upon the tax lists of 1920 and 1921, and a tax laid in accordance with such lists. In the brief and argument of the defendant, the taxability of this portion of the dam is discussed upon principle and authority, as properly referable to the question whether or not the same was real property; that is, whether the controlling rule is found in the general provisions of the sections of the statutes relating to real and personal property, and the situs of each for taxation. We do not conceive this to be the real situation, but rather that the entire question is governed by General Statutes, § 1219, and involved in its construction. This section reads: "TAXATION OF WATER-POWER AND WORKS WHEN USED IN DIFFERENT TOWN FROM THAT IN WHICH POND IS. When such power is appropriated and used in any other town than that in which the dam,

canal, reservoir or pond creating it is located, the valuation of the land occupied by such dam, canal, reservoir or pond, and the increased flowage occasioned thereby, shall be made and set in the list in the town in which such dam, canal, reservoir or pond is located, to the owner of such power at the average assessed valuation of improved farming land in said town, and such power shall be assessed and set in the list in the town in which it is so used and appropriated as incidental to the machinery which is operated by it, and not separately as distinct property; and the assessors shall, in estimating either the incidental value of such power to the machinery operated by it, or its net rental value, deduct from the amount which would otherwise be assessed against such power the value of said land so occupied as aforesaid."

The intent of this statute becomes clear when, referring to the preceding section of the statute relating to taxing of water-power in general, that is, where the works are situated entirely in one town (General Statutes, § 1218), we find that the whole of the plant "shall be assessed and set in the list as incidental to the machinery which is operated by it, and not separately as distinct property." These two sections, taken together, show clearly what kinds of property embraced in the provisions of § 1218 were, by the operation of § 1219, to be treated in a different way as regards assessment by reason of its location in another town, that is, land occupied by the "dam, canal, reservoir or pond, and the increased flowage occasioned thereby." The object was to let the town in which the works were not situated, tax land and land only; the land on which the dam rests is there taxable, but not the dam itself. That remains as in § 1218, incidental to the machinery; we might, perhaps, in a general way, say it is a part of the machinery. This was our inter-

pretation of § 2345 of the General Statutes of 1902, identical so far as the point under consideration is concerned, in the case of *East Granby* v. *Hartford Electric Light Co.*, 76 Conn. 169, 173, 56 Atl. 514. In that case, the plaintiff town sued to recover a tax upon defendant's property, and the case involved the question of the location of the dam and reservoir, which were partly in East Granby and partly in Bloomfield, but the power was created and used in East Granby. Upon this point the opinion reads: "Although the defendant's dam and reservoir were located partly in the town of Bloomfield, the water-power created was used and appropriated in the plaintiff town within the meaning of § 3850 of the Revision of 1888 (General Statutes of 1902, § 2345), and all the property taxed was, apparently, properly taxed under the statutes regulating the taxation of such property, as located in the latter town." The part of the dam in the instant case which was assessed in the defendant town, was not properly taxable there, as the trial court held.

There remains the question of the taxability of the towers conveying the plaintiff's wires and cables. It is claimed by plaintiff that these are personal property connected with and forming a part of its plant in Monroe in like manner as the dam. The defendant contends that they are real property, or, if not, personal property within the purview of General Statues, § 1199, which provides: "and all of the personal estate of such corporation which is permanently located or stationed in any town shall be set in the list of the town in which said property is located."

With the contention that these structures are real property we cannot agree. The company has power under its charter to locate poles and other structures to carry its wires and cables "on, over, through, or under all the streets, avenues, lanes, highways, public grounds,

and waters" in the territory in which it is entitled to do business, "and may establish and erect such buildings, fixtures, poles, conduits, or other works, . . . as the purposes of said company or the convenient transaction of its business may require," subject to the provisions of the General Statutes of the State relating to the similar use of highways, public grounds and waters for similar purposes. Special Laws, Vol. 14, p. 860.

With reference to the claim of the defendant that the structures above mentioned are real property, we note that General Statutes, § 1219, does not speak of real property but of "land," while § 1199, relating to the taxation of corporate property, uses the words "real estate." Since the defendant claims the taxability of these structures under the provisions of § 1199, and also, apparently, that the words "land" and "real estate" are to be taken as synonomous in statutes relating to taxation, we will briefly consider the claim. If the interest of the plaintiff in the towers in question is real estate, it must arise in one of two ways: first, that the license or easement to use the land, statutory as regards highways, and arising out of contract where privately owned land is concerned, is real estate, that is, a real interest in real property owned by the plaintiff in connection with the structures thereon which are permanently and very securely annexed to the land, or second, that the structures are so permanently affixed to the soil that they have become fixtures, and are the property of the owner of the land, who granted the license or easement.

We may dismiss the latter claim by saying that if it were correct, the structures would be taxable as property of the original owner of the land, grantor of the easement, and would not be subject to taxation either as real or personal property of the plaintiff, a

result not contemplated by the defendant, nor sought by it. Whether as between the original owners of the lands over which the easements described in the statement of facts have been acquired by the plaintiff, the removability of the structures, that is, whether or not they become fixtures, is determined by the intent of the parties to the transaction creating the right of way, and considering the character and design of the structures, and the use to which they were to be put, it would be very unreasonable to hold as matter of law that the same were intended to be annexed to the freehold as fixtures. Their substantial and solid construction cannot modify the legal inference derived from their intended use. We cannot see that they are to be viewed as a matter of law in any other light than are telegraph poles which convey a similar product, electricity.

Passing to the first claim, that the licenses or easements are in themselves real property for purposes of taxation, it follows that since they could then exist only in connection with some dominant estate, they are part thereof, adding perhaps some value to the latter, and are to be assessed in connection therewith, if at all, and not separately. We held in *Norwalk* v. *New Canaan*, 85 Conn. 119, 127, 81 Atl. 1027, that " easements such as rights of way and the right to conduct water by pipes from or across the lands of another, are not estates in land but mere rights, incorporeal hereditaments. . . . Such mere incorporeal rights are not ordinarily separately assessed. It is tangible property which is subject to assessment and taxation. Unless the taxing statute either expressly or by implication makes them taxable, they are not to be included in the list."

In *Field* v. *Guilford Water Co.*, 79 Conn. 70, 72, 73, 63 Atl. 723, we held that water mains were taxable within the meaning of General Statutes, Rev. 1902,

§ 2329, as "personal property attached to, or connected with," the defendant's establishment in the town of Clinton where it had its reservoir and principal place of business. The discussion in that case is helpful on principle, and the analogy of the case to the instant case is significant; but since the plaintiff claims that § 2329, now appearing as § 1199 of the Revision of 1918, has been so radically changed by amendment (Public Acts of 1907, Chap. 184) as to negative the holding in *Field* v. *Guilford Water Co.*, *supra*, by the inclusion of the provision that "all of the personal estate of such corporation which is permanently located or stationed in any town shall be set in the list of the town in which said property is located,"—we do not deem its detailed consideration as a present authority by way of analogy to be material, and, for the same reason, do not discuss the case of *Preston* v. *Norwich Compressed Air Power Co.*, 83 Conn. 561, 78 Atl. 312, in view of our grounds of decision in the present case.

We are thus brought to the final and principal contention of the defendant, that the towers are taxable as personal property under the provision included in General Statutes, § 1199, just quoted. An extended and careful consideration of the legislation regarding taxation of corporate property in connection with interpretive decisions of this court, leads us to a conclusion adverse to this claim, and constrains us to hold that the solution of this question consists entirely in the determination of the scope and effect of General Statutes, § 1218, § 1219, relating to taxation of water-power. So far as any question arising out of the present reservation is concerned, we regard the scope and effect of these sections as controlling and, standing by themselves, to cover the entire question, that is, that they are self-sufficing and exclusive.

The taxing system of the State has for sometime developed in the direction of treating the taxable estate of various corporations, the extent and peculiarity of whose operations have put them in classes differentiated from ordinary business corporations, in a way differing from that which obtains affecting the latter, both as regards assessment and collection. Thus telephone and telegraph companies pay no tax locally upon their equipment devoted to the generation, transmission and use of power on which tax is paid directly to the State, as well as upon other tangible and intangible personal property, but only upon their real estate where located. On the other hand, the entire property of non-municipal water companies "whether such property be considered real or personal estate" is split up for taxation among the towns where its land and pipes and all sorts of equipment are situated.

In like manner, the statute law has expressly provided for the taxation of corporations which create or reserve water-power for the purpose of generating power by appropriate machinery and transmitting it, either in its original state as water or as transmuted into electric power by appropriate machinery. The provisions of law in this regard, as we have seen, are contained in § 1218 and § 1219 of the General Statutes. Section 1218 lays down a fundamental rule that the water-power of such a corporation operating works in the same town in which the power is appropriated, shall be treated as a whole and set in the tax list as incidental to the machinery operated by it, and not separately as distinct property, which is to say, that the whole property shall be treated as a unit. But to meet a case in which the whole or a part of the dam, reservoir or pond creating the power is in another town, § 1219 provides that land occupied by a canal, reservoir or pond shall be assessed for taxation in the

town where located. That is to say, that at the out-
set, the statute provides for the taxation of such a
plant as an entirety, and not "separately as distinct
property."

. If this were as far as the statute went as appears in
the provisions of § 1218, a manifest injustice would
be done, if a part of the corporate property used in
connection with the works, but situated in an ad-
joining town, were held exempt from taxation, as
was the case in *West Hartford* v. *Water Commissioners*,
44 Conn. 360. Land covered by dam, reservoir, or
other works of a power corporation is, under § 1218, not
assessed separately from the rest of the entire works,
but is included therein. *Hazard Powder Co.* v. *En-
field*, 80 Conn. 486, 488, 69 Atl. 16. This is equitable
and proper where all the property is in one town; but
where the property is used in connection with land
partly or wholly in another town, equity and sound
policy demand segregation of the land for taxation
in the latter municipality. This separation extends
no further than indicated by the provision of law
effecting it. In all other respects the comprehensive
definition of water-power for taxation in the town
where the power is created and utilized stands as the
law. This is emphasized by Public Acts of 1869,
Chapter 131, § 1, by which the law which we now have,
came into effect, and which has not since been modified
in any way affecting the question under discussion.
This section provides that when water-power is created
in any town, "it shall be taxed to the owner as provided
in the following sections, and not otherwise." The
following sections are substantially the same as we
now have in § 1218 and § 1219. The first section was
probably omitted in revision as unnecessary, as it
certainly would appear to be, yet it throws light on
the legislative intent. So we must conclude that the

exception made in § 1219 to the general and comprehensive rule of valuation laid down in § 1218 is the only modification of the terms of the latter section, that can be held admissible.  In the instant case, the power is appropriated and used in the town of Monroe, from which it is transmitted to various points in the State by means of wires or cables running upon the towers as above described.  These latter are a means of use, in fact the only effective means of marketing the product of the water-power, and not being within the exceptions of § 1219 for purposes of taxation, they must be held to be taxable as part of the machinery of power production, and in the town where the power is created and used.

The question whether any miscellaneous personal property of the plaintiff, such as trucks, horse drawn or automotive, horses, tools, and office equipment, located and stationed at convenient points along the company's transmission lines, might not come under the general provisions of § 1199, and be taxable where located and stationed, is not raised in the record, although alluded to in argument, and is not passed upon.

There is no error.

In this opinion the other judges concurred.