### EDITH G. WHITE
*vs.*
### TOWN OF VERNON

Superior Court          Tolland County          File No. 4624

MEMORANDUM FILED JULY 14, 1941.

*Donald C. Fisk*, and *Harry H. Lugg*, of Rockville, for the Plaintiff.

*Bernard J. Ackerman*, of Rockville, for the Defendant.

QUINLAN, J. The complaint, drawn in pursuance of Form No. 574 of the Connecticut Practice Book (1934), page 366, applying for relief against wrongful tax assessment and for reimbursement of the excess of taxes paid, under section 375c of the 1935 Cumulative Supplement, presents an interesting question.

The statute reads as follows: "*Remedy when property wrongfully assessed.* When it shall be claimed that a tax has been

laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court of the county in which such town or city is situated. Such application may be made within one year from the time when such tax became due and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the superior court shall have power to grant such relief upon such terms and in such manner and form as shall to justice and equity appertain, and costs may be taxed at the discretion of the court. If such assessment shall be reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

The statute before the amendment of 1935 was section 1201 of the General Statutes, Revision of 1930, and provided that "the owner....*prior to the payment of such tax, may....* make application for relief," etc., and also provided that "*the pendency of such application shall....suspend action upon the tax....*"

The only question in this case was attempted to be raised on demurrer, on the ground that it appeared from the complaint that the tax had been paid. The trial judge hearing the demurrer pointed out that it also appeared that the tax was paid "under protest and involuntarily" and overruled the demurrer. Does this claimed involuntary payment suffice to negate the limitation placed on the right to bring the action?

No briefs were filed, and the citations furnished to the court do not satisfactorily resolve the question at issue, of themselves, and seem to require some reference to the history of the statute and the relief provided for such tax assessment situations. The statute was originally passed in 1921 (Public Acts of 1921, chap. 302).

In the footnote to section 1201, the statute in effect just

prior to the existing one, it is stated that section 1201 codifies the common-law rule, citing 101 Conn. 390, 392. This citation refers to the case of *Connecticut Light & Power Co. vs. Oxford,* 101 Conn. 383. That case, at page 391, says: "The statute in question [1921] does not act in any way as such an appeal. It provides another and different method of attacking the validity of an assessment upon two different grounds included in its provisions, and upon those only. We have held heretofore that the remedy by appeal from the action of a board of relief is not exclusive, and that the tax may be paid and an action brought to recover it as money illegally received and retained, and that in extreme cases an injunction may be granted restraining the collection of the tax. (Cases cited, all of which have been examined by me.)

"To these recognized *remedies* the statute of 1921 merely added one more, and this added remedy was, properly speaking, merely declaratory of existing legal and equitable rights...." (Italics added.)

Having in mind that the statute's history is important in determining its construction, our own court has said: "A law *imposing a tax is not to be construed strictly because it takes money or property in invitum,* (although its provisions are for that reason to be strictly executed,) for it is taken as a share of a necessary public burden; nor *liberally,* like laws intended to effect directly some great public object; but *fairly* for the *government* and justly for the citizen; and so as to carry out the intention of the legislature, gathered from the language used, read in connection with the general purpose of the law, and the nature of the property on which the tax is imposed, and of the legal relation of the taxpayer to it." *Hubbard vs. Brainard,* 35 Conn. 563, 568. (Italics added.) As suggested in the very next sentence of that case, we come to the application of this rule to the provisions of the law at issue.

The tax payment here, though made before the filing of the application, was accompanied by a letter indicating that it was made involuntarily and under protest. The better and more modern doctrine (which recognizes *fairness* to the government and *justice* to the citizen) does not require the taxpayer to refuse to pay his tax to test its validity but permits him to make payment *under protest* and such payment is not

*in contemplation of law* voluntary. *Underwood Typewriter Co. vs. Chamberlain,* 92 Conn. 199. In that case the court said (at p. 205): "The compulsion of the law began when the tax was due. . . . The plaintiff pursued the orderly course, it paid under protest and upon pressure of the law's duress." *See Spencer vs. Consumers Oil Co.,* 115 Conn. 554, 562, where the court said: "Under our modern Connecticut law, a taxpayer need not wait until actual force or duress is used to compel payment, but may pay under protest and sue for recovery, if the statute under which the tax is levied and collected provides for distress levies or other forms of duress."

In general "statutes relating to remedies and procedure are to be construed liberally with a view to the effective admin-istration of justice." 59 C.J. *Statutes* §669.

Counsel in their citations did not include a case decided by this court (O'Sullivan, J.), *Albert Steiger, Inc. vs. City of Hartford,* 8 Conn. Sup. 295 (Hartford County, No. 53633). The question here was not moot there and the court's discussion is *obiter.* On the face of the court's obser-vations its views there are apparently contrary to the con-clusions reached here, but no one (and this is probably what Judge O'Sullivan had in mind) would grant a *voluntary* tax-payer rights under this statute. That is undoubtedly what was intended to be avoided. Such a person might be deemed to have waived his right to relief. A reading of the statute convinces one that the phrase "prior to the payment of such tax" might be eliminated so far as practical results are con-cerned were it not to encourage a voluntary taxpayer. The form under which this action was brought recognizes that the tax might be paid and allows for reimbursement. I ap-preciate that this can readily be explained as involving a pay-ment made after the bringing of the application by duress processes.

I prefer to adopt a recognition of the manner in which this tax was paid as one involuntary in nature, and certainly under protest, as being within the spirit of the rule of con-struction declared by our court in the *Hubbard* case, *supra,* *"fairly* for the government and *justly* for the citizen." Espe-cially should this be so if, as has been declared, the statute is declaratory of existing remedies. *Connecticut Light & Power Co. vs. Oxford, supra.* Had the plaintiff made the

application and paid her taxes the following day, there would be no question.

Judgment may be entered in accordance with stipulation filed (contingent upon the court's finding favorably to the plaintiff).