[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
The plaintiff Hubbell Incorporated ("Hubbell") has brought an appeal, pursuant to General Statutes §§ 12-117a and 12-53(d),[1]
from a decision of the City of Bridgeport Board of Tax Review ("Board") denying its appeal from a revaluation and increased assessment of its personal property for the years 1989, 1990 and 1991. The plaintiff has also brought an action for relief from wrongful assessment, pursuant to General Statutes § 12-119,[2] alleging that taxes levied against it by the defendant pursuant to the revaluation were "manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property."[3] Both matters are premised on an allegedly improper revaluation of the plaintiff's property by the defendant pursuant to General Statutes § 12-53. The two matters were consolidated for trial.
The plaintiff is in the business of manufacturing electrical equipment and has maintained a place of business within the City of Bridgeport throughout the twentieth century. Since at least 1984, it has filed business personal property statements with the assessor of the City of Bridgeport as required by law. General Statutes §§ 12-41(c), 12-49, 12-59.[4]
These statements, provided by the City as standard forms, contain separate categories for (1) machinery, equipment and tools, (2) furniture, fixtures and office equipment, and (3) computer equipment. For the year 1989, the plaintiff declared machinery and equipment of $5,606,820, furniture and fixtures of $624,940, and computer equipment of $936,080. For the year 1990, the plaintiff declared machinery and equipment of $5,379,110; furniture and fixtures of $622,150, and computers of $269,980. For the 1991 tax year, the plaintiff declared machinery and equipment of $5,188,700; furniture and fixtures of $390,360, and computer equipment of $1,059,490.[5]
On April 29, 1992, the City of Bridgeport formally entered into a "Valuation Audit Agreement" with Century Financial Services, Ltd. ("Century"), an entity which essentially was CT Page 678 composed of two principals, James Crozier and Jeffrey Coulson. The agreement provided that Century would perform certain services for which it would be paid a flat fee of $375 per account, plus "25% of additional taxes . . . assessable by the City against any account . . . if such additional Taxes relate to personal property identified or the assessed value of which is subject to increase as a result of Century's efforts. Such amount shall be paid within 30 days after Century has billed the City with respect to a particular Account . . . ."
On August 10, 1992, the plaintiff received a letter from the City Tax Assessor stating that its October 1, 1991 personal property schedule had been selected for review and that Century had been engaged to conduct the review for the City. The letter also stated: "State Statutes have extended the allowable time period to perform personal property tax reviews. Accordingly, you should be prepared to furnish Century financial Associates with applicable records pertaining to the Grand Lists of October 1, 1989, October 1, 1990, and October 1, 1991."
Later that same month, Century contacted the plaintiff requesting data to support its personal property tax reviews. Within a few days, the plaintiff sent Century its worksheets and requested a meeting. The plaintiff did not hear from Century before September 15, 1992, when it received a notice of change in assessment "per personal property tax audit" from the Office of the Tax Assessor. The assessed value of the plaintiff's personal property as of October 1, 1989 was changed from $7,167,840 to $9,301,275. The assessed value of the plaintiff's personal property as of October 1, 1990 was changed from $6,271,240 to $8,734,600. The assessed value of the plaintiff's personal property as of October 1, 1991 was changed from $6,638,550 to $7,640,270. The plaintiff appealed the increased assessment to the Board of Tax Review, and the Board denied its appeal. The plaintiff then appealed to this court from the decision of the Board pursuant to General Statutes §§ 12-117a
and 12-53(d) and brought an action for relief from wrongful assessment pursuant to General Statutes § 12-119.[6]
For purposes of both its application for relief from wrongful assessment pursuant to General Statutes § 12-119 and its appeal pursuant to General Statutes § 12-117a, the plaintiff claims that the tax assessor erroneously revalued its personal property after the statutory period to do so had expired, and that the taxes levied against it as a result thereof are CT Page 679 manifestly excessive and were arrived at in disregard of the valuation statutes.
 II.
The plaintiff claims that it is entitled to relief under General Statutes § 12-119 and to have its appeal pursuant to General Statutes § 12-117a sustained because the assessor erroneously revalued its property without statutory authority to do so and because the tax levied against the plaintiff as a result thereof is "manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of its personal property". Specifically, the plaintiff claims that, although General Statutes § 12-53 permits the assessor to add omitted property to a list within up to three years from the date of filing, the statute does not permit the assessor to reach back three years and retroactively revalue property previously listed by a taxpayer. The defendant argues that General Statutes §§ 12-53(b) and (c) permit the assessor to adjust, up to three years after filing, the valuation of taxable property which was omitted or underreported in a return.
General Statutes § 12-53(b) provides, in relevant part: "If the assessor or board of assessors of any town believe that taxable property has been omitted from the list given in by any person or that taxable property belongs to any person who has not given in a list, or if the assessor or board of assessors are unable to determine the value of any property without the assistance of the owner, custodian or other person having knowledge of the same, they may give notice in writing to the owner, custodian or other person having knowledge of any such property or the valuation thereof, of the time and place of a hearing with respect thereto. Such notice shall, within three years after the due date for the filing of such list or within three years after the date on which such list is received by the assessor or board of assessors, if later, be placed in the hands of such person or left at his usual place of residence or business or shall be sent to him by registered or certified mail at his last-known place of residence or business. Such notice shall direct the person named therein to appear before the assessor or board of assessors with books of account, papers, documents and other records for examination under oath relative to any such property or the valuation thereof. All omitted taxable property, discovered at such hearing or any adjournment CT Page 680 thereof and not listed by the owner as required by law, shall be added to his list by such assessor or board of assessors at the percentage of its actual valuation, as determined by the assessor or board of assessors in accordance with the provisions of sections 12-63, 12-64 and 12-71, and twenty-five per cent of such assessment shall be added thereto. Subject to the provisions of sections 12-57 and 12-129, if any property is discovered at such hearing or any adjournment thereof to be listed in error by the owner, it shall be removed from such owner's list by the assessor or board of assessors. No person shall be excused from giving testimony or producing books of account, papers, documents and other records on the ground that such testimony and such production of documents will tend to incriminate him, but such testimony and such production of documentary evidence shall not be used in any criminal proceeding against him. Any person who fails to appear at the time and place of such hearing in such notice designated or at any adjournment thereof, or, having appeared, refuses to answer any pertinent question put to him or who fails to produce the books, papers or other documents mentioned in such notice, shall be fined not more than one hundred dollars or imprisoned not more than thirty days or both. All property which the assessor or board of assessors believes should have been listed for taxation and was not listed and concerning which sufficient information cannot be obtained by them at such hearing, or any adjournment thereof, shall be added to the list at such percentage of the actual valuation thereof from the best information obtainable by the assessor or board of assessors and twenty-five per cent shall be added to such assessment."
The plaintiff argues that General Statutes § 12-53 does "not permit a tax assessor to reach back over three years as the Bridgeport Tax Assessor did in this case and retroactively revalue personal property previously listed by the tax payer and assessed by the tax Assessor within the period of time prescribed for the completion of his duties." (Emphasis added.) The court agrees. As Judge Fuller held in a prior decision in this case [10 Conn. L. Rptr. 324], and as Judge Thim held in Southern Connecticut GasCo. v. Bridgeport, Superior Court, Judicial District of Fairfield, No. 304579, 15 Conn. L. Rptr. No. 8, p. 278 (1995), General Statutes § 12-53 applies to claims where property was omitted from a return but not to claims relating to the valuation of property previously included in a return. This court agrees with those well reasoned decisions. The defendants herein altered the valuation of the plaintiff's previously CT Page 681 listed property by retroactively changing, inter alia, the depreciation period of the plaintiff's computers from five years to seven years, with the result that the plaintiff was reassessed with a higher tax than that which had previously been assessed and paid.
A cause of action under General Statutes § 12-119 alleging that an assessment is "manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property" may be sustained upon a finding that there has been a manifest or flagrant disregard of statutory provisions; Connecticut Light Power v. Oxford, 101 Conn. 383, 392, 126 A. 1 (1924); that there was misfeasance or nonfeasance by the taxing authorities; L.G.DeFelice Sons, Inc. v. Wethersfield, 167 Conn. 509, 512-13,356 A.2d 144 (1975); or that "the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on [the taxing authority's] part." Mead v. Greenwich,131 Conn. 273, 275, 38 A.2d 795 (1944).
As discussed above, the defendant revalued the plaintiff's previously listed personal property without statutory authority to do so. In addition, if ever there was a case of misfeasance or outright nonfeasance by the taxing authorities resulting in an arbitrary assessment which plainly shows a disregard of duty on the part of a taxing authority, this is such a case.[7] Century did little more than to take the plaintiff's business personal property statements and arbitrarily switch "computer equipment" with "furniture and fixtures," which depreciates more slowly. On coherent explanation for its action. The court finds that Century had no legitimate reason for the switch. Century never examined the plaintiff's personalty and in fact never even visited the plaintiff's facility. The documentation presented does not support Century's actions. To the contrary, the documentary evidence and the testimony presented clearly persuades the court that the characterization or classification by the plaintiff in its personal property statements was at all times correct.
The defendant's case is handicapped to the extent that it necessarily has had to rely on the testimony of one of the principals of Century. This court can ascribe very little credibility, and hence weight, to such testimony. This is because of the terms under which Century rendered its "services" to the City of Bridgeport. Century was compensated based on a CT Page 682 flat fee of $375 for each account plus "[a]n amount equal to 25%of additional Taxes . . . assessable by the city against any Account with respect to personal property included (or which should have been included) on the city's grand List prior to the October 1, 1991 Grand List, if such additional Taxes relate to personal property identified or the assessed value of which is subject to increase as a result of Century's efforts." (Emphasis added.) This agreement between the City of Bridgeport and Century also provided: "Such amount shall be paid within 30 days after Century has billed the City with respect to a particular Account. . . ." Simply stated, Century's methodology is so Account. . . ." Simply stated, Century's methodology is so indefensible and its interest in distorting data so evident that the evidence and testimony it presented is not worthy of belief.[8]
For the aforementioned reasons, the court finds that the additional taxes levied against the plaintiff as a result of the revaluation are manifestly excessive and were arrived at by disregarding statutory authority. Accordingly, the court finds for the plaintiff on its application for relief pursuant to General Statutes § 12-119, and sustains the plaintiff's appeal pursuant to General Statutes §§ 12-117a and 12-53(d). Pursuant to General Statutes § 12-117a, the defendant is ordered to reimburse the plaintiff all amounts it overpaid on its 1989, 1990, and 1991 property taxes, together with interest thereon.