[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 20, 1997
Plaintiff brought this tax appeal in three counts and by amended complaint, the first count claiming excessive valuation and the second count claiming excessive valuation and that plaintiff's rights were not taxable in the Town of Ellington. Count three alleges a wrongful "taking" of plaintiff's property in the Town of Ellington. By document dated February 12, 1997, plaintiff moved for summary judgment on counts one and two.
By document dated October 17, 1996, the parties entered into a Stipulation of Facts.
Defendant moved for summary judgment on counts one, two and three and opposed plaintiff's motion for summary judgment on counts one and two, all by documents dated April 3, 1997.
On May 16, 1997, plaintiff filed an amended complaint adding count four, alleging it has only flowage rights in Ellington that are not subject to taxation and requesting an injunction ordering removal of any assessments and tax bills against same. On the same date, plaintiff filed a "statutory amendment" adding to the taxable lists subject to this appeal, the lists of October 1, 1995 and October 1, 1996. No objections thereto having been filed, said amendments were automatically granted.
Both parties claim there is no genuine issue of material fact and that they are entitled to summary judgment as a matter of law. However, defendant, by its memorandum dated April 3, 1997, claims that based upon an affidavit of its town engineer, the dam in question has a mechanism to open and close the gateway for CT Page 6708 purposes of releasing water below the spillway of the dam; and that there is a question of material fact as to ". . . whether the plaintiff appropriated — built — installed or used any machinery in relation to the water impounded." The court disagrees. Whether the mechanism to open and close the gateway is "machinery" under the statute is a question of law. The parties agree as to what is there. It is a legal interpretation as to what it is under the applicable statute. In addition, defendant suggests putting aside the affidavits and decide, based upon the stipulation, whether the Town of Ellington has a right to tax the plaintiff's flowage rights.
The court agrees to the extent it will decide that question as well as whether there has been a "taking" of the flowage rights as alleged in count three. Further, based upon the oral argument of the parties, there appears to be agreement that these issues should be decided by the court.
Facts: The following facts are not in dispute:
 1. A dam built by the plaintiff in the Town of Stafford impounded water at the elevation authorized by the recorded flowage rights in the Town of Stafford and contiguous upstream in the Town of Ellington which is known as Crystal Lake.
 2. The plaintiff possesses certain water privileges pursuant to which it maintains the impounded water over certain lands of fee owners in the Town of Ellington and contiguous downstream lands of fee owners in the Town of Stafford in accordance with flowage rights recorded in the land records between 1836 and 1853.
 3. The effect of the documents enumerated in paragraph one of the stipulation is to grant to the plaintiff and its predecessors in title the right to raise and lower the water level on Crystal Lake and thereby flood the encumbered property, commonly referred to as "flowage rights". It is a right to either use the water or to store it for future use.
 4. The only "machinery" subject of this appeal is the mechanism to open and close the gateway for purposes of releasing water below the spillway of the dam.
Issues: CT Page 6709
 I. Does the Town of Ellington have a right to tax the plaintiff's flowage rights?
 (a) First, a look at CGS § 12-64 which gives a municipality the power to assess and collect taxes on real estate. It reads in pertinent part:
 "(a) All the following-mentioned property, not exempted, shall be set in the list of the town where it is situated . . . shall be liable to taxation . . . Dwelling houses, garages, barns . . . and easements to use air space whether or not contiguous to the surface of the ground." Emphasis added.
The inclusion of easements to use air space was added to the statute by amendment in 1967. As stated in Hartford ElectricLight Co. v. Wethersfield, 165 Conn. 211, 218, 219 (1973), in referring to lessees and holders of a right of way, the court stated:
 "Such interests, however, as are not expressly or by clear implication made taxable under the taxing statute are not to be included in the list. Connecticut Light Power Co. v. Oxford, 101 Conn. 383, 396, 126 A. 1; Norwalk v. New Canaan, 85 Conn. 119, 127, 81 A. 1027.
 Although none of the cited cases has so stated, the correctness of our settled interpretation would seem readily apparent in view of the introductory language of § 12-64: `All the following-mentioned property, not exempted, shall be set in the list of the town where it is situated and shall be liable to taxation.' The subsequent enumeration recites only specific tangible property (buildings, lots, etc.) with the otherwise single exception of `easements to use air space.' No mention is made of leaseholds or easements per se. Unquestionably this language gives the assessors authority to impose a tax on any of the enumerated items situated in their respective towns. Since a municipality has no authority to tax except as granted by the General Statutes, the exercise of its taxing power, to be lawful, must strictly conform to the terms by which they were given."
Additionally, the Legislature had an opportunity to add easements or leases or flowage rights when it added "easement to use air space" and chose not to do so. Under the rules of CT Page 6710 statutory construction, the inclusion of one means the exclusion of the other.[1]
Accordingly, this court finds that there is no power to tax the plaintiff's flowage rights under CGS § 12-64.
 (b) CGS § 12-77, which provides for taxation of water power, reads as follows:
 When water power, created or reserved in any manner by works wholly located in the same town in which it is appropriated and used, is used by its owner, the whole shall be assessed and set in the list as incidental to the machinery which is operated by it, and not separately as distinct property. When such power or any part thereof is leased from its owner, it shall, to the extent to which it is so leased, be assessed and set in his list at a valuation not exceeding one hundred sevenths of the net revenue derived therefrom.
The words "and set in the list as incidental to the machinerywhich is operated by it" (emphasis added) clearly means water power that operates machinery. There is no mill, factory or other facility that is operated by or receives its power to operate from the water that constitutes the flowage rights in the case at bar. The mechanism to open and close the gateway to release water is not machinery that is operated by the water power. If anything, the mechanism is used to control the water power; it is not the water power that operates the mechanism. This language in the statute is clear and unambiguous.
Where the language of a statute is clear and unambiguous, there is no need for the court to speculate as to the intent of the legislature. The courts may rely upon that language as the intent of the legislature. Nichols v. Warren, 209 Conn. 191, 196
(1988); Howard v. Commissioner, 230 Conn. 17, 22 (1994); Suttonv. Lopes, 201 Conn. 115, 118 (1986).
Accordingly, the court finds that CGS § 12-77 is not applicable to the case at bar.
Further CGS § 12-78 refers back to "such power" and, therefore, refers to CGS § 12-77; and CGS § 12-78 also refers ". . . to the machinery which is operated by it, . . .". CGS § 12-78 not only relies upon CGS § 12-77 but it even uses the same language. For the reasons stated above as to CGS CT Page 6711 § 12-77, the court finds that CGS § 12-78 is not applicable to the case at bar. The cases cited by defendant are not on point and do not change the court's finding.
Accordingly, the court finds that the Town of Ellington does not have a right to tax the plaintiff's flowage rights as a matter of law. The plaintiff's motion for summary judgment is granted as to counts I and II of the amended complaint.
 II. Did the defendant wrongfully "take" the plaintiff's property, i.e. the flowage rights?
The court agrees with the defendant's contention that there was no taking of the plaintiff's property. The excerpt from GreatHill Lake, Inc. v. Caswell, 126 Conn. 364, 367 (1940), is instructive:
 "As stated, the abutting defendants own most of the land under water and, subject to the right of flowage, may exercise full rights in their individual parcels. Adams v. Pease, 2 Conn. 481, 483. The right of flowage is, after all, only an easement. Isele v. Arlington Five Cents Savings Bank, 135 Mass. 142; Clifton v. Watuppa Reservoir Co., 243 Mass. 198, 200, 137 N.E. 362; Todd v. Austin, 34 Conn. 78, 90. The owner of the easement has all rights incident or necessary to its proper enjoyment but nothing more. American Brass Co. v. Serra, 104 Conn. 139, 150, 132 A. 565; 17 Am.Jur. 993; 67 C.J. 918."
Also, see Geger v. Carlson, 146 Conn. 288, 295 (1959) in which the court states that a flowage easement ". . . gives no `ownership' as such in the water . . .". The owner of the fee, however, cannot interfere with the rights of the easement, and in the case at bar the owners of the fee under Crystal Lake are not interfering with the flowage rights. Accordingly, there is no "taking".[2]
The defendant's motion for summary judgment on count three is granted.[3]
RITTENBAND, J.