HARTFORD ELECTRIC LIGHT COMPANY *v.* TOWN OF WETHERSFIELD

SHAPIRO, LOISELLE, MACDONALD, DANNEHY and BRACKEN, Js.

212

Argued June 7—decided June 29, 1973

*William J. Butler,* for the appellant (defendant).

*Paul W. Orth,* with whom was *David L. Grogins,* for the appellee (plaintiff).

SHAPIRO, J. The plaintiff, the Hartford Electric Light Company, hereinafter called HELCO, brought an action pursuant to § 12-119 of the General Statutes against the defendant, the town of Wethersfield. In its complaint, HELCO asserted that the

town had unlawfully assessed rights-of-way belonging to HELCO for the reason that these rights-of-way are not taxable property under Connecticut law. The plaintiff moved for summary judgment on the sole issue of whether its rights-of-way were taxable. There being no substantial issue of fact, the court granted the motion and rendered judgment in favor of HELCO. On appeal, the only claim of the defendant town[1] concerns the taxability of HELCO's interests under General Statutes § 12-64. The relevant provisions of the statute are set out in the footnote.[2]

This litigation arose shortly after the assessor of the town notified HELCO in January, 1971, of the disputed assessments. The assessments were laid on nine real estate interests, some being in the form of an easement and some in the form of a lease, by which HELCO possesses certain rights in various lands of others, situated in the town of Wethersfield, to use portions of said lands for utility purposes.

[1] The defendant's claim that the trial court had no jurisdiction to entertain the action under General Statutes § 12-119 has been abandoned in oral argument. This statute is decidedly the correct procedure for an aggrieved taxpayer to invoke where the questioned assessment is claimed to be illegal. *State ex rel. Waterbury Corrugated Container Co.* v. *Kilduff*, 128 Conn. 647, 649, 25 A.2d 62; *Connecticut Light & Power Co.* v. *Oxford*, 101 Conn. 383, 389, 126 A. 1.

[2] Section 12-64 of the General Statutes, entitled "Real estate liable to taxation. Easements in air space," provides: "All the following-mentioned property, not exempted, shall be set in the list of the town where it is situated and, except as otherwise provided by law, shall be liable to taxation at a uniform percentage of its present true and actual valuation, not exceeding one hundred per cent of such valuation, to be determined by the assessors: Dwelling houses, garages, barns, sheds, stores, shops, mills, buildings used for business, commercial, financial, manufacturing, mercantile and trading purposes, ice houses, warehouses, silos, all other buildings, house lots,

By the notice of assessment, the town informed HELCO that it had valued the nine separate interests at a total assessment value of $262,400. A tax based on that assessment was levied by the town on HELCO's rights-of-way on or about May 15, 1971, and was due and payable July 1, 1971. The attorneys for the parties submitted to the court three separate documents and stipulated that these instruments fairly represent the documents creating the nine rights-of-way which the town has assessed. It was further stipulated that the submission of all documents creating HELCO's rights-of-way would be repetitious and burdensome, and that a proper adjudication could be obtained by an examination of the grants set forth in the three instruments submitted. These documents were made a part of the finding and have been reproduced in the record. Two of these documents evidence easements which give to the grantee, HELCO, basically the right to erect and maintain electric power lines, together with incidental rights to trim hazardous trees and

---

all other building lots, agricultural lands, shellfish lands, all other lands, quarries, mines, ore beds, fisheries, property in fish pounds, machinery and easements to use air space whether or not contiguous to the surface of the ground. An easement to use air space shall be in [sic] interest in real estate and may be assessed separately from the surface of the ground below it. Any interest in real estate shall be set by the assessors in the list of the person in whose name the title to such interest stands on the land records and, if the interest in real estate consists of an easement to use air space, whether or not contiguous to the surface of the ground, which easement is in the form of a lease for a period of not less than fifty years, which lease is recorded in the land records of the town and provides that the lessee shall pay all taxes, said interest shall be deemed to be a separate parcel and shall be separately assessed in the name of the lessee. Land, buildings and easements to use air rights within highway rights of way leased by the state to non-exempt lessees shall be assessed and taxed on an ad valorem basis to the lessees."

obstructions. The third and earliest of the documents, executed in 1914, evidences a "lease for right of way" for ninety-nine years; by its terms, this "lease" gives HELCO the identical but limited privileges of the first two documents and expressly reserves to the grantor all of his original rights except such as interfere with the enumerated rights for utility purposes of the grantee.

# I

It is the town's contention that the plaintiff's rights-of-way are taxable under § 12-64 of the General Statutes.[3] Its first argument is based on an erroneous interpretation of one part of the statute which this court has corrected on more than one occasion. The third sentence of § 12-64 begins: "Any interest in real estate shall be set by the assessors in the list of the person in whose name the title to such interest stands on the land records . . . ." Since the easements in question are indisputably interests in real estate,[4] the defendant asserts that

---

[3] There is no question that under General Statutes §§ 12-71 and 12-80 the power lines and transmission equipment of HELCO are taxable as personal property.

[4] Perhaps in response to this court's language in *Norwalk* v. *New Canaan*, 85 Conn. 119, 127, 81 A. 1027, quoted in *Connecticut Light & Power Co.* v. *Oxford*, 101 Conn. 383, 396, 126 A. 1, in which public utility easements were declared to be "not estates in land, but mere rights, incorporeal hereditaments," the legislature promulgated chapter 167 of Public Acts of 1927, now General Statutes § 47-42, which provides, in pertinent part: "Any right of way over or easement in or to any land . . . or any interest therein granted . . . by means of any instrument executed in the manner provided by law for the conveyance of any interest in real estate, which instrument purports to convey to . . . any corporation and to its successors and assigns, a right of way over or easements in or to such land . . . for any purpose connected with the generation, transmission or distribution of electric energy . . . *shall create a transmissible and assignable interest in the land* in the grantee therein described." (Emphasis added.)

this provision of § 12-64 emphatically makes the ownership interests of the plaintiff taxable in the town of Wethersfield.

In *Sanford's Appeal,* 75 Conn. 590, 592, 54 A. 739, decided in 1903, this court disposed of an identical argument aimed at the taxation of a mining lease in stating the following: "Section 2299 of the General Statutes of 1902, provides that 'any interest in real estate listed for taxation shall be set by the assessors in the list of the party in whose name the title to such interest stands on the land records of the town in which such real estate is situated.' This section is part of an Act passed in 1887, entitled an 'Act concerning the Taxation and Record of Title of Real Estate.' Public Acts of 1887, Chap. 127, p. 749. . . . It means that any separately *taxable* [emphasis added] interest in real estate shall be set in the list in the name of the owner of record of such interest. An estate for years in land is a mere chattel interest. *Goodwin* v. *Goodwin,* 33 Conn. 314, 318; *Flannery* v. *Rohrmayer,* 49 id. 27, 28. Such an interest, unless otherwise provided by statute, is generally not taxable separately from the freehold; although there may be exceptional cases where an interest in real estate, conveyed by an instrument in the form of a lease for a term of years, may for certain purposes be regarded as a fee, as in the case of *Brainard* v. *Colchester,* 31 Conn. 407, 411, in which it was held that a lease of real estate for a gross sum, for 999 years, was to be considered for the purposes of that case, as practically a conveyance of a fee. Such a chattel interest is not named either in § 2322 or § 2323 (Rev. 1902) [now §§ 12-64 and 12-71], which enumerate the kinds of real and personal property liable to taxation . . . . The interest in real estate which § 2299 [Rev. 1902] requires to be listed in the

name of the record owner, is not a mere chattel interest in land, but a freehold interest properly termed real estate."

One year later, in *Middletown & Portland Bridge Co.* v. *Middletown,* 77 Conn. 314, 59 A. 34, this court was confronted with the assertion that the statutory language subjected a bridge to taxation as real estate. Again, this court rejected the argument, observing that the municipality's construction would extend taxation to railroads and public utility equipment that may be attached to the soil. The plain answer to this contention was simply that the statute made no provision for the listing and valuation of such property as real estate liable to taxation. Id., 317; see also *Comstock* v. *Waterford,* 85 Conn. 6, 9–10, 81 A. 1059; *Field* v. *Guilford Water Co.,* 79 Conn. 70, 71, 63 A. 723. In *Montgomery* v. *Branford,* 107 Conn. 697, 142 A. 574, where the defendant town sought to tax a lease for sixty-four years in reliance on the statutory language in question, the ruling in *Sanford's Appeal,* supra, was reasserted. "Our decisions have interpreted the record owner to mean the freehold or fee owner. Leased land can only be assessed against the lessor, the freehold owner." *Montgomery* v. *Branford,* supra, 701.

The provision in § 12-64 which requires the assessors to set "[a]ny interest in real estate" in the list of the record owner of such interest has thus been definitively interpreted to mean no more than that the assessor must list any taxable interest, previously defined as "[d]welling houses, garages, barns, sheds, . . . buildings, . . . house lots," in the name of the record owner of the freehold. This interpretation accords with the rule of ejusdem generis, a rule implicitly recognized in our previ-

ously cited decisions and explained thus in *Easterbrook* v. *Hebrew Ladies Orphan Society*, 85 Conn. 289, 296, 82 A. 561: "[W]here a particular enumeration is followed by general descriptive words, the latter will be understood as limited in their scope to . . . things of the same general kind or character as those specified in the particular enumeration." Cf. *Greenwich Trust Co.* v. *Tyson*, 129 Conn. 211, 221, 27 A.2d 166.

The contention of the defendant that the quoted provision opens up to taxation any conceivable, recorded interest in real estate ignores not only our previous decisions but the consequences, clearly unintended by the statute, to which it would lead. Under the defendant's theory, so long as the interest in land be recorded, the assessors might tax the interest of a beneficiary of real property held in trust, as well as a lessee and a holder of a right-of-way. Such interests, however, as are not expressly or by clear implication made taxable under the taxing statute are not to be included in the list. *Connecticut Light & Power Co.* v. *Oxford*, 101 Conn. 383, 396, 126 A. 1; *Norwalk* v. *New Canaan*, 85 Conn. 119, 127, 81 A. 1027.

Although none of the cited cases has so stated, the correctness of our settled interpretation would seem readily apparent in view of the introductory language of § 12-64: "All the following-mentioned property, not exempted, shall be set in the list of the town where it is situated and shall be liable to taxation." The subsequent enumeration recites only specific tangible property (buildings, lots, etc.) with the otherwise single exception of "easements to use air space." No mention is made of leaseholds or easements per se. Unquestionably this language

gives the assessors authority to impose a tax on any of the enumerated items situated in their respective towns. Since a municipality has no authority to tax except as granted by the General Statutes, the exercise of its taxing power, to be lawful, must strictly conform to the terms by which they were given. *Consolidated Diesel Electric Corporation* v. *Stamford,* 156 Conn. 33, 36, 238 A.2d 410; *State ex rel. Bennett* v. *Glynn,* 154 Conn. 237, 243, 224 A.2d 711; *Chamberlain* v. *Bridgeport,* 88 Conn. 480, 490, 91 A. 380. These considerations, together with the rule that ambiguities in taxing statutes are construed in favor of the taxpayer; *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352; *Consolidated Diesel Electric Corporation* v. *Stamford,* supra, 36; *Connelly* v. *Waterbury National Bank,* 136 Conn. 503, 510, 72 A.2d 645; lead to no other conclusion than that the defendant's interpretation is untenable.

## II

A related point to be drawn from the foregoing is clear. Even supposing that public utility easements were within the scope of taxable interests under § 12-64, it is evident that the defendant town would be wrong in taxing HELCO rather than the record owners of the freehold estate. See *Connecticut Light & Power Co.* v. *Oxford,* supra, 395-96; *Comstock* v. *Waterford,* 85 Conn. 6, 10, 81 A. 1059. The defendant argues, however, that HELCO's interests extend to such limits that the grantor is left with no more than a profit a prendre—a right to participate in the fruits of the soil. Practically, the defendant argues, HELCO has a possessory interest and should be treated as the fee owner; since the grantor cannot build or make improvements or in-

deed do anything which interferes with HELCO's utility easement, his rights amount to little more than an easement.

If by this argument the defendant intends to assert that the grantor has in fact nothing more than the naked legal title to the land, the instruments which evidence the rights of HELCO do not reveal this to be the situation. Rather, in each of the three representative documents submitted to the court the grantor has expressly reserved his original rights in the affected land. Recalling that the case at bar was decided on a motion for summary judgment, we do not suppose the defendant to mean that, notwithstanding the instruments, the practical effect of the conveyances was to leave the grantor with nothing of value. Compare, in this connection, *Grand River Dam Authority* v. *Martin*, 192 Okla. 614, 138 P.2d 82; note, 6 A.L.R.2d 205. Such a contention would require that the defendant demonstrate facts; it could plainly not be entertained on a motion for summary judgment or in this appeal.

We note that a power company's right to erect transmitting devices and to remove obstructions from the area may so limit the use of the land that the remaining rights of the landowner are severely curtailed. Customarily, however, the right-of-way granted to an electric company to maintain power lines does not extinguish the landowner's ordinary use of the property. *Dunn* v. *Pacific Gas & Electric Co.*, 43 Cal. 2d 265, 272 P.2d 745. Provided that he does not hamper the operations reasonably implied by the terms of the grant, the landowner may raise crops, travel across the strip, extract minerals and remove timber from the land. *Collins* v. *Alabama*

*Power Co.,* 214 Ala. 643, 108 So. 868; *Alabama Power Co.* v. *Keystone Lime Co.,* 191 Ala. 58, 67 So. 833; *Kentucky & West Virginia Power Co.* v. *Elkhorn City Land Co.,* 212 Ky. 624, 279 S.W. 1082. In contrast, the right-of-way granted to an electric company does not entitle it to occupy any part of the surface of the land except the space occupied by the equipment and necessary for access thereto. *Texas Public Utilities Co.* v. *Bass,* 297 S.W. 301 (Tex. Civ. App.); see generally, note, 6 A.L.R.2d 205. Since the right-of-way does not entitle an easement holder to exclusive possession, the power company may not erect a fence so as to cut off the strip of land from the remaining property of the landowner. *Alabama Power Co.* v. *Sides,* 212 Ala. 687, 103 So. 859; *Aycock* v. *Houston Lighting & Power Co.,* 175 S.W.2d 710 (Tex. Civ. App.).

Thus, although the landowner's remaining use of land over which an electric company has an easement will normally vary with the nature of the land, his rights as owner of the fee are recognizably substantial. The defendant's contention that HELCO's easements are of such magnitude as to create a tax exemption to which HELCO is not entitled hardly finds the support claimed from the holding in *Quinebaug Reservoir Co.* v. *Union,* 73 Conn. 294, 47 A. 328. In that case, the plaintiff possessed certain water privileges pursuant to which it flooded the land of the fee owner. The court, ruling that the privileges were taxable, reasoned (p. 298): "Such a use of land may, so long as it is continued, practically extinguish the value of the land for any other purpose than that of sustaining the artificial burden to which it has been subjected." The critical distinction which the defendant overlooks, however, is that

the applicable statutes, §§ 3849 and 3850 of the Revision of 1888[5] specifically made water power created or reserved in any manner a taxable interest. In effect, those statutes provided that land would not be removed from the town tax list simply because it might be transformed into an artificial lake bed. In the absence of an analogous statute governing the taxation of public utility easements, the court's reasoning in the *Quinebaug* case is inapplicable here.

### III

The claim of the defendant which we next consider concerns the applicability of a recent statutory amendment to § 12-64, Public Acts 1967, No. 829. By this amendment "easements to use air space" are now made taxable interests in real estate for the purposes of § 12-64. The defendant argues that HELCO's ownership interests, as evidenced by the three representative documents, undoubtedly convey a right to use air space over the burdened land. Granted that power lines, no less than clothes lines, billboards, awnings and the like, occupy space above the land, the question for this court to resolve is more than a matter of categorization. The neologism "easements to use air space" is left undefined in the statute. Counsel have cited no authority nor has our research disclosed a definitive judicial interpretation of the term. Where, as here, the wording and literal context of the statute provide no clue to the meaning of a provision, then its legislative history, the object sought to be accomplished and the circumstances surrounding its enactment are appropriate matters for judicial consideration. See *Connecticut Light & Power Co.* v. *Sullivan*, 150

---

[5] Compare with General Statutes §§ 12-77, 12-78.

Conn. 578, 581, 192 A.2d 545; *Sullivan* v. *Town Council*, 143 Conn. 280, 284, 121 A.2d 630; *Hazzard* v. *Gallucci*, 89 Conn. 196, 198, 93 A. 230.

Recalling the rules, discussed above, which require strict construction of taxing statutes; *Hartford Electric Light Co.* v. *Sullivan*, 161 Conn. 145, 154, 285 A.2d 352; it is clear that the burden is on the defendant to sustain its claim that the disputed interests are taxable.

When the bill which ultimately led to the statutory amendment was discussed on the floor of the House of Representatives it was hailed as a bold new concept in taxation and the use of air space.[6] Making reference to the financial crisis of cities whose valuable land was removed from the tax lists by new municipal parking lots, public highways and streets, one member called the attention of the House of Representatives to the virtues of the bill in meeting this crisis. 12 H.R. Proc., Pt. 9, 1967 Sess., pp. 4182–4183. Its real purpose, it was stated, was to allow a municipality to tax air rights above its property, railroad tracks and streets. Id., p. 4183. Several instances of the types of air space usage contemplated by the bill were cited. The listing included Hartford's Constitution Plaza and public library, the Fall River, Massachusetts, municipal building complex and the Prudential Center of Boston, all of

---

[6] Only three other states had similar statutory provisions at the time of the House debate. See Colo. Rev. Stat. Ann. § 118-12-1 (1964), N.J. Stat. Ann. § 46: 3–19 (1940), Pa. Stat. Ann. Tit. 68, § 801 (1965). The topic of air space utilization had, however, received extensive comment. See generally, Wright, The Law of Airspace (1968), with particular reference to pages 203–209; Wright, "Airspace Utilization on Highway Rights of Way," 55 Iowa L. Rev. 761 (1970); Bell, "The Vertical Extent of Ownership in Land," 76 U. Pa. L. Rev. 631 (1928); Bell, "Air Rights," 23 Ill. L. Rev. 250 (1928).

which structures are suspended wholly or partly above public highways. The legislators were reminded that the Connecticut statutes did not currently provide for taxation of such above-ground edifices. Id., pp. 4185–86.

Although the statements of the legislators could not control unequivocal statutory language to the contrary, they are, under the circumstances of this case, strong indications of legislative intent. *Sullivan* v. *Town Council,* supra, 286. With more land in or near urban centers being lost due to highway construction, statutes such as the amendment to § 12-64 provide a means of returning this property to tax rolls with a consequently substantial increase in municipal tax revenues.

If the legislature intended that public utilities easements to use air space be taxable it could have used appropriate language to express that intent. This it did not do. With respect to this final claim, we therefore conclude that the plaintiff's easements are not taxable as "easements to use air space" under the provisions of § 12-64.

There is no error.

In this opinion the other judges concurred.