CONNECTICUT LIGHT AND POWER COMPANY *v.*
HOLSON COMPANY

BOGDANSKI, C. J., PETERS, ARMENTANO, DALY and BIELUCH, Js.

Argued June 11—decision released August 18, 1981

*Paul W. Orth,* with whom were *Robert C. Hunt, Jr.,* and *Austin Carey, Jr.,* for the appellant-appellee (plaintiff).

*Robert A. Slavitt,* with whom, on the brief, was *A. D. Slavitt,* for the appellee-appellant (defendant).

BOGDANSKI, C. J. This appeal arises from a dispute regarding an easement granted to the plaintiff for the purpose of transmitting electricity. In its action the plaintiff sought injunctions to prohibit all parking, loading and unloading within the easement area and to require the defendant to remove a portion of its building which encroaches into the easement area. The defendant counterclaimed seeking an order requiring the plaintiff to relocate a utility pole located within the easement

area. The trial court denied the requested injunctions, ordered the defendant to make a compensatory extension of the border of the plaintiff's easement, and awarded the plaintiff one dollar. The plaintiff has appealed only from the judgment denying an injunction against parking in the easement area. The defendant has cross appealed from the denial of its request for an order requiring the plaintiff to relocate its pole.

The trial court's factual findings may be summarized as follows: In 1923, Zelda Sears Wiswell granted to the plaintiff Connecticut Light & Power Co. (CL&P) an easement, privilege and right-of-way eighty feet wide across her land in the town of Wilton. The deed of conveyance, printed on a standard form[1] furnished by the plaintiff, granted to it the right to erect and maintain poles, wires and

---

[1] The grantee is given "the right to enter upon and erect and permanently maintain on such right of way, poles, towers and wires for the transmission of electric current, including the necessary guy wires and braces and other usual appurtenances, and to trim or remove any brush or trees that, in the judgment of the company may interfere with same."

The plaintiff utility company revised its standard easement grant form in 1941 and again in 1974. The 1974 version contains the following precise restrictive language, including the prohibition of parking and storing of vehicles on its rights-of-way:

"The Grantor agrees not to erect any building or structure on, place or store any materials on, park or store any vehicles on, grade, excavate, fill or flood said right of way, or otherwise use said right of way in any manner which, in the opinion of the Grantee, may interfere with the exercise of the rights and/or easements herein granted, or any of them, or which may create a hazard.

"The Grantor further agrees that nothing shall be attached to the property of the Grantee installed by virtue of this Easement except such things as are placed thereon by the Grantee.

"The Grantor reserves the right to use said right of way for agricultural purposes other than the growing of trees and shrubs and for other purposes which, in the opinion of the Grantee, do not interfere with the exercise of the rights and or easements herein granted, or any of them, and which do not create a hazard."

towers for the transmission of electric current. The grantor reserved to herself, her heirs and assigns, "the right to cultivate the ground between said poles and towers and beneath said wires, provided that such use shall not interfere with or obstruct the rights herein granted."

Between 1945 and 1955, a Mr. Spencer owned part of the Wiswell property. He used the land, including the easement area, as a sod farm and occasionally parked his large farm equipment under the power lines. He paved a driveway through the easement area and used it for the parking and loading of vehicles. A representative of CL&P advised Spencer that he was free to do anything within the easement area except erect a building.

In 1967, the defendant Holson Company (Holson) purchased the Wiswell property, which was adjacent to its year-old factory building. By 1970, Holson had paved a parking lot across and throughout the easement area. There has been considerable motor vehicle activity within the easement area since the late 1960s. There is no evidence that CL&P objected to this activity before 1974. Although no formal application has been filed yet, since the late 1960s CL&P has been contemplating an increase in power transmission which would involve changing to a much higher voltage transmission line.

In 1973, Holson began planning an extension to its factory, and in August, 1974, it submitted the plans to Mr. Beal, CL&P's manager of real estate. CL&P had not aggressively protected its easement rights prior to Beal's appointment in 1974. Thereafter, it adopted a policy of affirmative protection

of its easement rights. The defendant's construction plans indicated that the building would extend to the edge of the easement. Six loading bays would be located on the face of the extension so that trucks would be within the easement area when loading and unloading.

At a meeting with Holson on September 19, 1974, Beal expressed displeasure with the projected amount of vehicular activity. Holson commenced construction of the addition on September 15, 1975. Upon learning that construction had begun, Beal wrote to Holson, requested a second meeting, and expressed his concern that the planned extension and anticipated activity would encroach upon CL&P's use and enjoyment of the easement. On October 29, 1975, the date of the meeting, Holson was committed to approximately one million dollars worth of construction and renovation contracts. A series of communications and attempts to resolve the parties' differences failed. The plaintiff instituted this action on June 2, 1976. The appeal and the cross appeal are from judgments denying injunctive relief.

The rule is well established that the owner of an easement is entitled to relief upon a showing that he will be disturbed or obstructed in the exercise of his right. *Leabo* v. *Leninski,* 182 Conn. 611, 615, 438 A.2d 1153 (1981); *Wambeck* v. *Lovetri,* 141 Conn. 558, 564, 107 A.2d 395 (1954); *Waterbury Trust Co.* v. *G.L.D. Realty Co.,* 121 Conn. 50, 54, 182 A. 466 (1936). The granting or refusing of injunctive relief, however, rests within the sound discretion of the trial court and its action will not be disturbed unless it has abused its discretion. *DeCecco* v. *Beach,* 174 Conn. 29, 35, 381 A.2d 543

(1977); *Hammerberg* v. *Leinert,* 132 Conn. 596, 604–605, 46 A.2d 420 (1946). "[T]he power of equity to grant injunctive relief may be exercised only under demanding circumstances." *Nicholson* v. *Connecticut Half-Way House, Inc.,* 153 Conn. 507, 511, 218 A.2d 383 (1966); see *Leo Foundation* v. *Cabelus,* 151 Conn. 655, 657, 201 A.2d 654 (1964).

The plaintiff first claims that the court weighed the equities before determining the parties' respective legal rights. Its memorandum of decision[2] indicates that the trial court did evaluate and determine the rights of the parties. The court concluded that "[t]he rights of the defendant include the passage, standing, and parking of vehicles, even the unloading of trucks, within the easement area." Thus the trial court did make a determination as to the parties' rights. The plaintiff's first claim is without merit.

The plaintiff next claims that the reservation clause in the 1923 deed restricts the defendant's use of the land within the easement to agriculture and therefore excludes repeated, prolonged parking of vehicles. By granting an easement, a grantor conveys to the grantee only that which is specifically expressed in the document, and retains all use of the land not inconsistent with the grantee's use and enjoyment of the easement. *Collins* v. *Alabama*

---

[2] On page 20 of the record, the trial court stated: "The issues to be determined now are fourfold: (1) What are the rights of the respective parties with regard to the land affected by the easement . . . ."

On page 22 of the record the trial court stated: "The proper approach to the instant case is to consider the equities on both sides and the history of conduct of each party in order to determine if the plaintiff is entitled to injunctive relief. First, it is necessary to examine the respective rights of the parties in the land over which the easement extends."

*Power Co.,* 214 Ala. 643, 645, 108 So. 868 (1926);
see *Hartford Electric Light Co.* v. *Wethersfield,* 165
Conn. 211, 220, 332 A.2d 83 (1973). A reservation
clause does not operate to preclude other uses by
the grantor not specifically reserved unless such
intent is clearly expressed. *Georgia Power Co.* v.
*Leonard,* 187 Ga. 608, 611, 1 S.E.2d 579 (1939);
2 Thompson, Real Property (1961) § 425, pp. 681,
691. "It is not inconsistent to maintain the fee
together with the rights appurtenant thereto while
at the same time reserving from an easement
granted out of said fee a more limited expressed
right, for the reservation is a part of the definition
of the easement and is not a statement of the rights
which attach to the ownership of the fee interest."
*Los Angeles* v. *Igna,* 208 Cal. App. 2d 338, 341–42,
25 Cal. Rptr. 247 (1962).

As already noted, Zelda Sears Wiswell conveyed
the easement by signing a standard form provided
by the plaintiff. Because the prevailing land use in
the Wilton area in 1923 was agriculture, the printed
reservation clause preserved her right to cultivate
the land. It was, however, reasonable for the trial
court to conclude that it was not the intention of the
parties in 1923 to constrain the grantor's activities
to farming for all time. Rather, the intention was to
reserve to the grantor such use of the land as would
not obstruct or interfere with the plaintiff's use and
enjoyment of its easement.

Where the plaintiff owns an easement for the
purpose of transmitting electric power, the servient
owner is prohibited from interfering with the plain-
tiff's use for such purpose. The court determined
that the defendant has the right to park, load and
unload within the easement area. Implicit in this

finding is the court's determination that those activities do not interfere with the plaintiff's use and enjoyment of its easement.

The rights of an easement owner and the owner of the servient tenement are correlative. Even absent a proviso in the deed restricting the grantor to noninterfering uses of the land, the law implies such restrictions. See *Gager* v. *Carlson,* 146 Conn. 288, 292, 150 A.2d 302 (1959). When, however, what is necessary for the use and enjoyment is uncertain, a standard of reasonableness is imposed. 5 Restatement, Property (1944) § 486, comment (a);[3] see *Sachs* v. *Toquet,* 121 Conn. 60, 64, 183 A. 22 (1936); *Los Angeles* v. *Ingersoll-Rand Co.,* 57 Cal. App. 3d 889, 129 Cal. Rptr. 485 (1976). It is not generally clear whether parking facilities will materially interfere with transmission lines, and indeed, the cases provide no uniform rule. See *Hartford Electric Light Co.* v. *Levitz,* 173 Conn. 15, 376 A.2d 381 (1977); *Los Angeles* v. *Ingersoll-Rand Co.,* supra; *Los Angeles* v. *Igna,* supra; *Western Massachusetts Electric Co.* v. *Sambo's of Massachusetts, Inc.,* 8 Mass. App. 815, 821, 398 N.E.2d 729 (1979). In any event, the plaintiff had the burden of establishing that the defendant's parking, loading and unloading of trucks within the easement area materially interfered with its easement.

---

[3] "USES NOT INCONSISTENT WITH CONVEYANCE. So far as the language of the conveyance creating an easement precisely defines the privileges of the owner of it, the privileges of use of the owner of the servient tenement are also precisely defined. As the precision of definition decreases, the application of the principle that the owner of the easement and the possessor of the servient tenement must be reasonable in the exercise of their respective privileges becomes more pronounced. Under this principle, the privilege of use of the possessor of the servient tenement may vary as the respective needs of himself and the owner of the easement vary." 5 Restatement, Property (1944) § 486, comment (a).

The court heard the testimony of Mr. Ashton, an engineer employed by CL&P, concerning the risk of fire and the effects of vehicular activity and parking on its ability to service efficiently its power lines in the event of a power outage. The court also heard evidence and viewed photographs of the Holson operations and their relation to the power lines. The court's conclusion that the activities did not interfere with the plaintiff's easement rights must stand unless it is clearly erroneous in view of the evidence and pleadings in the whole record.[4] *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980); see Practice Book § 3060D.

Moreover, even if the trial court had determined that the defendant's vehicular activites did interfere with CL&P's use and enjoyment of its easement, the court could have properly denied the injunction. "An injunction is an equitable remedy, and may be denied if the balance of the equities favors the defendant." *Hartford Electric Light Co.* v. *Levitz,* supra, 21; see *Bauby* v. *Krasow,* 107 Conn. 109, 139 A. 508 (1927). In its memorandum of decision, the court supported its denial of the injunction by an examination of the equities: "[T]he

[4] In *Western Massachusetts Electric Co.* v. *Sambo's of Massachusetts, Inc.,* 8 Mass. App. 815, 398 N.E.2d 729 (1979), the trial court's finding that parking and vehicular activity would not interfere with the power company's easement was held clearly erroneous on appeal. *Western Massachusetts Electric* differs factually from the present case in that, inter alia, the parking lot and adjacent building had not yet been constructed.

In the present case the trial court's determination that parking does not interfere with CL&P's easement is based on the testimony heard and the facts found in this particular case. Upholding the trial court's judgment in this case does not imply that parking and vehicular activity will not interfere with power line easements under different circumstances.

prior conduct and acquiescence of the plaintiff, the substantial investment by the defendant, and the plaintiff's delay in seeking injunctive relief thus permitting the completion of the addition to defendant's building." The finding that the defendant had the right to park, load or unload, even if erroneous, would be harmless error in light of the court's view of the equities. *Milton* v. *Wainwright,* 407 U.S. 371, 377–78, 92 S. Ct. 2174, 33 L. Ed. 2d 1 (1972); *State* v. *Runkles,* 174 Conn. 405, 413, 389 A.2d 730, cert. denied, 439 U.S. 859, 99 S. Ct. 177, 58 L. Ed. 2d 168 (1978).

The defendant's single claim in its cross appeal is that the court, having found that the plaintiff's easement does not prohibit parking, loading and unloading, should have ordered the plaintiff to relocate its wooden pole that is blocking one of the defendant's loading bays. The reasoning that supports the court's denial of the plaintiff's injunction also supports the court's denial of relief to the defendant. See *Hartford Electric Light Co.* v. *Wethersfield,* supra, 220–21. The trial court acted within its reasonable discretion in denying the defendant equitable relief.

There is no error.

In this opinion the other judges concurred.