[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case is an administrative appeal regarding the Greenwich Planning and Zoning Commission's approval of an application by the Belle Haven Club, Inc. and the Belle Haven Land Company Inc. The application sought a special exception and site plan approval to renovate the Club's existing clubhouse and facilities. The defendants have brought a Motion to Dismiss claiming that the plaintiffs do not have standing to appeal because they lack statutory aggrievement under Conn. Gen. Stat. § 8-8, classical aggrievement under Conn. Gen. Stat. § 8-8 and/or statutory aggrievement under Conn. Gen. Stat. § 22a-19. After an evidentiary hearing the court makes the following finding of facts by a preponderance of the evidence.
 Facts
Plaintiffs Allan Bernard and Nancy Bernard own and reside at the property located at 33 Byram Drive Greenwich, Connecticut. Plaintiffs Matthew Bernard and Hilary Bernard own and reside at the property located at 83 Meadow Wood Drive Greenwich, Connecticut. Plaintiffs Lawrence Goichman and Jennifer Goichman own and reside at the property located at 33 Meadow Wood Drive Greenwich, Connecticut. Plaintiff Odette Mouakaad owns and resides at the property located at 205 Otter Rock Drive Greenwich, Connecticut. Plaintiffs' properties are all located within the Belle Haven private residential community. CT Page 16920
The Belle Haven Club is the lessee in possession of the real property located at 100 Harbor Drive, Greenwich, Connecticut. The Belle Haven Land Company, as owner, and the Belle Haven Club, as lessee, of the 4.118 acre property located at 100 Harbor Drive filed an application for special permit and site plan review with the Town of Greenwich Planning Zoning Commission on or about August 25, 2000. The application sought permission to: (1) elevate the clubhouse so the facility would be lifted out of the flood zone (2) demolish an existing portion of the building (3) add a net addition to the building of 1408 square feet to improve staff housing conditions and add storage and mechanical space and (4) rehabilitate the existing boat ramp. None of the plaintiffs' property is within a hundred feet of 100 Harbor Drive.
The Town of Greenwich Planning Zoning Commission conducted hearings on the special permit and site plan review on October 3, 2000, January 23, 2001 and February 13, 2001. At the administrative hearings, plaintiffs Allan Bernard, Lawrence and Jennifer Goichman and Matthew and Hilary Bernard filed verified intervention petitions pursuant to Conn. Gen. Stat. § 22a-19.
In a letter dated February 27, 2001, approving the application, the defendant Commission issued findings regarding the intervention petitions. Specifically, it found:
WHEREAS, an Intervention Petition pursuant to Section 22a-19 of the Connecticut General Statutes was filed on behalf of several residents citing that this application is "reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the State", and
WHEREAS, the Commission finds pursuant to Section 22a-19 of the Connecticut General Statutes that this project will not unreasonably pollute air or water resources and in fact will actually improve the water quality of coastal waters;
Accordingly, the Commission considered the Intervention Petitions of the plaintiffs and made findings regarding these Petitions.
 Ownership of the Land and Roads
The Belle Haven Land Company was created in 1884 to develop and sell building lots. As part of the company's creation, one thousand shares of capital stock in the Belle Haven Land Company were issued and held by the six investors. The Belle Haven Land Company sold off all the building lots and retained for itself ownership of the roads, the traffic CT Page 16921 islands, the area where the Belle Haven Club is now located, and a few other parcels of land. The Belle Haven Land Company currently owns the roads in Belle Haven, the land on which the Belle Haven Club sits and the building it occupies.
In or around 1897, the Belle Haven Landowners transferred all outstanding stock in the Belle Haven Land Company to Trustees to be held in trust for the use and benefit of all land owners in Belle Haven.
The plaintiffs have deeded rights to the use of the roadways that provide access to and from the Club, including the roadways immediately adjacent to the Club. Plaintiffs are granted the affirmative right, through their deeds to use the roads of Belle Haven for purposes of ingress, egress and general use of their properties. For example, plaintiff Goichman's deed provides in pertinent part that the Goichmans have ". . . the right to use in common with others to whom such right has been granted. . . . the ways and avenues of The Belle Haven Land Company as the same may be necessary and convenient in passing to and from the premises herein described."
As landowners in Belle Haven, plaintiffs are members of the Belle Haven Land Association. As members of the Belle Haven Land Association, plaintiffs are obligated to pay, in proportion to the value of their property, all costs and expenses incurred by the Belle Haven Land Company. A portion of the fees paid by plaintiffs is applied towards the maintenance, repair and improvement of the land upon which the Belle Haven Club sits, the seawall surrounding the Club, the roadways upon which the Club's parking is located, and the roadways that provide access to and from the Club.
Use of the roads within Belle Haven is restricted to land owners, their families, members and guests of the Club, guests of land owners and necessary service personnel. The general public does not pay for — and has no responsibility to pay for — the maintenance and capital improvements made to the roadways of the private Belle Haven community.
 Use of the Roads
The Belle Haven Club uses the roadways of the Belle Haven Community for parking because it does not have a parking lot. At most Belle Haven Club functions, the people attending park on property abutting the home owned by Odette Mouakaad on either side of her property. At some Belle Haven Club functions, the Belle Haven Club directs and/or authorizes the valet parking services to park patrons' cars on property abutting the home owned by Odette Mouakaad on both sides of her property. At some Belle Haven Club functions, the Belle Haven Club directs and/or authorizes the valet CT Page 16922 parking services to park patrons' cars on property abutting the home owned by Allan Bernard and Nancy Bernard. At some Belle Haven Club functions the Belle Haven Club directs and/or authorizes the valet parking services to park patrons' cars on property abutting the home owned by Matthew Bernard and Hilary Bernard.
There are only two roads within the Belle Haven community allowing traffic to enter and exit the Belle Haven Club.
Traffic entering and exiting the Belle Haven Club passes the properties owned by Mr. Mrs. Matthew Bernard and causes noise that the plaintiffs hear.
The traffic and noise caused by Belle Haven Club patrons has increased over the past five years. The congestion caused by Belle Haven Club patrons has also increased over the past five years.
Plaintiffs' properties abut and/or are within 100 feet of the private roads of the Belle Haven Land Company that are used for parking and transit by the Club's patrons.
There was no credible evidence presented that the Commission's approval of Belle Haven's special permit application will result in increased traffic. There was no credible evidence presented that the Commission's approval of Belle Haven's special permit application will result in increased use of the Club for commercial purposes.
There was no credible evidence presented that the Commission's approval of Belle Haven's special permit application will adversely affect the value of the plaintiff's property from its current value.
The Commission considered the private roads of Belle Haven, and the traffic and parking when it rendered its decision. Specifically, the Commission found that "a number of surrounding property owners have indicated that during large events on site, visitors to the facility use the adjoining streets for parking and often block private driveways . . . the Commission finds that this practice has occurred for many years and that the Belle Haven Land Company has not posted any signs which prohibit or restrict on street parking in the Belle Haven Community."
 Legal Discussion Statutory Agrrievement
Conn. Gen. Stat. § 8-8 provides in pertinent part:
CT Page 16923 a. "[A]ggrieved person" includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.
The plaintiffs make several arguments in support of aggrievement. First they argue that they are beneficial "owners" of the land upon which the Belle Haven Club sits and the roads which are affected by parking for Club functions and therefore they are within one hundred feet of the land involved in the decision. Second, they contend that because they own property (their homes) within one hundred feet of the roads which are affected by the parking for the club, and because the roads were "land involved in the decision of the board", they fall within the definition for statutory aggrievement. For the reasons discussed below, these arguments do not withstand scrutiny.
Plaintiffs do not Own the Club Land or Roads.
The plaintiffs have not cited any legal authority to support that they are "beneficial owners" of the property on which the Belle Haven Club sits. The Belle Haven Land Company owns the property the Club sits on and the surrounding roads. The plaintiffs are only beneficiaries of the trustees who constitute the shareholders of the Belle Haven Land Company. The owner of the property, the Belle Haven Land Company, is a separate legal entity from the landowners and is therefore the statutorily aggrieved landowner. D.S. Associates v. Planning ZoningCommission, 27 Conn. App. 508 (1992).
Likewise, plaintiffs have not cited any authority that they are the "beneficial owners' of the roads that the Club uses to park cars for Club events. Plaintiffs do have deeded rights to use the roads. However, even the plaintiffs describe these rights as an ". . . easement appurtenant to their properties. . . ." Black's Law Dictionary defines easement as: "An interest in land owned by another person, consisting of the right to use or control the land, or an area above or below it, for a specific limited purpose (such as to cross it for access to a public road)."
The plaintiffs have failed to cite any authority that an easement interest constitutes "owning land" as used in Conn. Gen. Stat. § 8-8
and the court does not believe this would be a proper interpretation of the statute.
The Roads Were not Land involved in the Decision
Plaintiffs do own property abutting and/or within a 100 foot radius of the private roads which the Belle Haven Club uses to park cars for club CT Page 16924 events. It is also true that the Commission considered the usage of the Belle Haven private roads during the public hearings and the effect the requested special permit would have on that usage — including the effects on traffic, parking, safety, emergency vehicle access, deterioration, repair and costs of repair, as well as noise. The plaintiffs therefore argue that they are aggrieved under General Statutes Section 8-8 because their property is adjacent to roads that constitute "land involved in the decision of the board."
Caltabiano v. Planning Zoning Commission, 211 Conn. 662 (1989), is the only appellate authority this court was able to find that squarely addressed the meaning of "land involved in the decision of the board" as set forth in Section 8-8. In that case the court found that "land involved" refers to the overall parcel of land owned by the applicant as opposed to the particular piece of the applicant's land that was the subject of the agency decision. The Supreme Court did not address the question of whether the "land involved" could also extend to land which might be affected as a result of the Commission decision regarding the property which is the subject of the application. However, this court's reading of Caltabiano is that the Supreme Court had concerns about interpreting Section 8-8 to even include the overall parcel as it could in some cases lead to bizarre results. There is absolutely no indication that the Court would extend this interpretation to also include other land that was discussed at the hearing as possibly being affected by the decision. Accordingly, the court finds that the plaintiffs are not statutorily aggrieved pursuant to Conn. Gen. Stat. § 8-8(2).
Classical Aggrievement
The plaintiffs are not "classically aggrieved" under Conn. Gen. Stat.
§ 8-8 because while they each may have a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, there was no evidence presented that their interests have been specially and injuriously affected in a way that is cognizable by law. Med Trans of Connecticut, Inc. v. Dept. of Public Health Addiction Services, 242 Conn. 152, 158-59 (1997). Each plaintiff's interest in the private roads of Belle Haven is an easement appurtenant to their properties, and gives them each the right of ingress to and egress from those properties. IL Giardino, LLC v. Belle Haven Land Co.,254 Conn. 502, 517 (2000). However, there was no evidence presented that the plaintiffs' interests will be disturbed and/or obstructed by the Commission's approval of the Belle Haven Club's special permit.Connecticut Light Power Co. v. Holson, Co., 185 Conn. 436, 440 A.2d 935
(1981); Leabo v. Leninski, 182 Conn. 611, 438 A.2d 1153 (1981). There was no credible evidence presented that the changes contemplated by the special permit will make the parking, congestion or noise situation on the CT Page 16925 roads any worse than it already is.
While the court is aware that the plaintiffs "need only establish a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected" in order to be classically aggrieved, they have failed to meet this standard. MercuryFuel Service, Inc. v. City of Waterbury, supra, quoting New England CableTelevision Assn., Inc. v. DPUC, 247 Conn. 95, 103, 717 A.2d 1276 (1998);Lewis v. Planning Zoning Commission, 771 A.2d 167, 62 Conn. App. 284
(2001) . . . Accordingly, the plaintiffs are not classically aggrieved pursuant to Conn. Gen. Stat. § 8-8.
Intervener Status
It is clear from the Commission's decision of February 13, 2001, which is set forth in a letter dated February 27, 2001, that the Commission considered the plaintiffs as interveners and addressed the environmental issues that had been raised by them.
Having been granted interveners' status by the Commission under Conn.Gen. Stat. § 22a-19, plaintiffs Allan Bernard, Matthew Bernard, Hilary Bernard, Lawrence Goichman and Jennifer Goichman have standing to appeal the environmental issues associated with the Commission's decision.Branhaven Plaza, L.L.C. v. Inland Wetlands Commission, 251 Conn. 269,276, n. 9 (1999).
The motion to dismiss is granted as to Nancy Bernard and Odette Mouakaad as they did not intervene pursuant to Section 22a-19 and have not established statutory or classical aggrievement.
So Ordered.
CHASE T. ROGERS SUPERIOR COURT JUDGE